UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| RODNEY DARNELL PETERSON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | No. 1:24-cv-402-CEA-MJD |
| INVESTIGATOR K. STILLWAGON, | ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is filed pro se and without prepayment of fees by Plaintiff Rodney Darnell Peterson ("Plaintiff"), an inmate at the Lincoln County Jail. Plaintiff initiated this case on December 30, 2024, by filing a complaint and an application to proceed *in forma pauperis* ("IFP").

Plaintiff's IFP motion is being granted by separate order entered contemporaneously herewith. As that order explains, Plaintiff's complaint must be screened in accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A, before any summons can be issued for service of process. As set forth below, the Court has reviewed Plaintiff's complaint pursuant to applicable screening standards. The Court will recommend Plaintiff's case be permitted to proceed past the screening stage as to his claims for damages; however, the case should be stayed pending resolution of Plaintiff's pending federal criminal case. The Court will further recommend Plaintiff's case be dismissed to the extent Plaintiff seeks injunctive relief related to his criminal case.

**I. STANDARDS**

Under 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court is responsible for screening all actions filed by plaintiffs seeking IFP status and dismissing any action, or portion thereof, which is frivolous or malicious, fails to state a claim for which relief can be granted, or if the IFP plaintiff

seeks monetary relief against a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) (citations omitted), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *Johns v. Maxey*, No. 2:07-CV-238, 2008 WL 4442467 *1 (E.D. Tenn. Sept. 25, 2008) (Greer, J.) (citations omitted); *see also* 28 U.S.C. § 1915A (requiring screening for prisoner plaintiffs seeking redress from government entities or their employees).

The standard required by §§ 1915(e)(2) and 1915A to properly state a claim for which relief can be granted is the same standard required by Federal Rule of Civil Procedure 12(b)(6). *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008); *accord Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). To avoid dismissal under Rule 12(b)(6), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not state "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). But it must contain more than mere "labels and conclusions, . . . a formulaic recitation of the elements," or "naked assertions . . . without further factual enhancement." *Id.* at 555, 557 (citations omitted). In other words, the complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). Stated differently, "the court must be able to draw a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *KSR Int'l Co. v. Delphi Auto. Sys.,* 523 F. App'x 357, 358–59 (6th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678).

In applying these standards, the Court also considers that the pleadings of pro se litigants are to be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, pro se plaintiffs must abide by "basic pleading standards," and the role

2

of the court is not to "conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (quotation marks and citations omitted). "[P]ro se litigants are not relieved of the duty to develop claims with an appropriate degree of specificity." *Kafele v. Lerner, Sampson, Rothfuss, L.P.A*, 161 F. App'x 487, 491 (6th Cir. 2005).

Finally, federal courts are courts of limited jurisdiction. When presented with a case, federal courts "presume" they lack jurisdiction until the party asserting jurisdiction demonstrates otherwise. *Renne v. Geary*, 501 U.S. 312, 316 (1991) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 (1986)). If at any time the Court determines it lacks subject matter jurisdiction, the Court "must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## II. ANALYSIS

Plaintiff drafted his complaint using a form titled, "Complaint for Violation of Civil Rights (42 U.S.C. Section 1983)" [Doc. 2]. He names one Defendant, identified as "Inv. K. Stillwagon," an investigator with the Johnson City Police Department. For his "Statement of Claim," he writes[1]:

> Inv. K. Stillwagon, while acting under color of state law, violated my constitutional rights. I was racially profiled and harassed by Inv. K. Stillwagon when he was following too close in his "unmarked" vehicle while driving on Interstate (26), Westbound, in violation of traffic law.
>
> Inv. Stillwagon used intimidation in an attempt to cause a situation where he had no probable cause to engage in a racially motivated traffic stop.
>
> Inv. K. Stillwagon while acting under the color of state law engaged in malicious prosecution when he made false claims that I was speeding, and when he made the false claim that he smelled marijuana.
>
> Inv. K. Stillwagon unconstitutionally extended the traffic stop with his false claim that he smelled marijuana, a claim that he made after I declined the permission for him to search the vehicle. A question that he asked me after he handed my driver's license back officially ending the traffic stop.

---

[1] In quoting Plaintiff's filings, the Court has added paragraph breaks and made minor, non-substantive corrections and changes without using brackets or other indicators. None of these changes affect the substance of Plaintiff's allegations or claims.

3

Inv. K. Stillwagon performed an illegal search and seizure with a warrantless search of two combination locked "smell proof" backpacks, one inside the other, where he cut open the backpacks after I refused to give him the combination. I am still in possession of those cut backpacks. Inv. K. Stillwagon left those bags inside the vehicle.

Inv. K. Stillwagon unjustly detained me when he asked me to get outside of my vehicle after he made the false claim of smelling marijuana.

After I was placed in handcuffs as a result of Inv. K. Stillwagon's outrageous conduct, common law malicious prosecution, and warrantless search, I became a victim of a false arrest and false imprisonment causing me severe emotional distress.

I, Rodney Darnell Peterson the plaintiff was traveling on Interstate (26) westbound in a rental SUV . . . which I borrowed from my friend Michael White. I was leaving from the Super 8 Hotel on Roan St. exit (11E), heading back home to Atlanta, GA, and then later going to Charlotte, NC. This was around 1:00a.m. on July 20, 2024. As I get onto Interstate (26) westbound, there was what appeared to be an accident in the left lane making only one lane available to travel for about 1 mile or so, moving fairly slow due to the accident in the stop and go format.

Once the traffic passed the accident, I used my turn signal to get in the left lane to go around a semi truck that was in front of me, . . . but as I proceeded . . . maintaining the speed limit, I noticed through the rear view mirror a vehicle aggressively following me too close on the rear bumper as I was going the speed limit which was (60 mph).

Due to the vehicle aggressively following me too close, when I saw the speed limit sign change to (65 mph), I sped up a little bit to avoid the vehicle that was aggressively following too close, in which I signaled with right indicator. Once I made the appropriate traffic maneuver trying to avoid the vehicle that was aggressively following me too close, blue lights began flashing from the vehicle that was behind me, in which was an unmarked SUV, I later found out as my vehicle pulled over immediately.

When the officer (Inv. K. Stillwagon) approached the passenger side of my vehicle in which I rolled down the window, Inv. K. Stillwagon then asks do I know why he pulled me over and I replied, "No," but then he responded that I was speeding, and I responded, "No Sir." Inv. K. Stillwagon then asks for my driver's license and registration along with where was I heading in which I replied, "to Atlanta." Inv. K. Stillwagon then asked why I was traveling so late, but I let him know to get ahead of the early morning traffic and also letting him know that I couldn't find the rental agreement, but the rental is registered to my friend Michael White. Inv. K. Stillwagon then tells me that he's going to run a check on my driver's license and

4

the vehicle's tag for the registration, but if everything was valid then I could continue on my journey to Atlanta with a warning.

Once Inv. K. Stillwagon returned to the passenger side of my vehicle, he handed me back my driver's license, but then asked me if he could search the vehicle and I replied, "No," to a consent to search. Inv. K. Stillwagon then falsely claims to smell marijuana without any smoke whatsoever in the air not even tobacco. At this point I am thinking that this frivolous traffic stop is racially motivated by Inv. K. Stillwagon because I . . . adhered to all traffic rules, especially due to the fact of me being employed in the field of Safety Traffic Control and I definitely wouldn't violate the trust of my friend by smoking anything to put him in jeopardy of the rental agreement.

I believe that this dialogue between me and Inv. K. Stillwagon was recorded and saved in my iCloud along with Inv. K. Stillwagon's dash cam or body cam if he was recording the traffic stop.

When I refused to consent to search the vehicle, Inv. K. Stillwagon tells me to turn off the vehicle and step out on the passenger side in which he gave me a "pat down," finding nothing. Once the back up assistance of the Johnson City Police arrived, extending this traffic stop about 10-15 more minutes while waiting for the K-9 unit to conduct a dog sniff which wasn't very reliable because there wasn't a clear indication that the dog alerted anywhere.

While conducting a search of the vehicle, Inv. K. Stillwagon is searching the vehicle's trunk where he runs across a "smell proof" backpack which had a security combination lock on it. Inv. K. Stillwagon then asks me for the combination to the backpack. I refused to reply but he then pulls out a knife and cuts the bag open without a warrant, and after he got the first bag open there was another bag that he asked me for the combination for, which I said that I didn't know, but he cuts that backpack open as well and [illegible] is the smaller one.

While conducting the illegal search & seizure of me and the property inside the vehicle, Inv. K. Stillwagon found nothing in the vehicle until he cut open the locked backpacks without a warrant or probable cause to extend the traffic stop. Then he officially ended it once he gave me back my driver's license without a written warning citation.

Upon cutting open the smaller backpack, Inv. K. Stillwagon pulled out a .38 revolver and Delta 8 cannabis in a "smell proof" jar. I was then handcuffed as a result of this illegal search & seizure, with this also being a false arrest and false imprisonment due to malicious prosecutions.

After being handcuffed, the Sgt. of the Johnson City Police seized $1,150 from my pocket, later to be on a seizure form drafted by Inv. K. Stillwagon, which I signed for at the Johnson City Police Dept.

5

> This outrageous conduct by Inv. K. Stillwagon and the Johnson City Police has resulted in me being detained at Washington County Jail with bond and now Laurel County Correctional Center as a federal detainee.

[Doc. 2 at Page ID # 12–16].

In a subsequent filing [Doc. 7], which the Court construes as a supplement to Plaintiff's original complaint, Plaintiff alleges Inv. Stillwagon violated his Fourth Amendment rights in an additional warrantless search conducted the same day as the traffic stop:

> On July 20, 2024, Inv. Kirt Stillwagon performed a warrantless search on a motel room that was in my name, violating my constitutional rights under the Fourth Amendment. Inv. Kirt Stillwagon claims to have received consent to search the room that was in my name from a temporary guest who had no rights to consent.
>
> On July 20, 2024, Inv. Kirt Stillwagon left the scene of the illegal traffic stop where he proceeded to the Super 8 motion in Johnson City, TN, on 108 Wesley St. Inv. Kirt Stillwagon reported that he performed a "knock and talk" on room 318. Room 318 was in my name. Inv. Stillwagon reported that he came in contact with a temporary guest who, upon questioning, reported that drugs were present in the room. Inv. Kirt Stillwagon reported that he received consent to search the room from this temporary guest who was not listed as a tenant of the room.
>
> Inv. K. Stillwagon reported that upon entering the room, he inquired about two bags, one being a backpack and the other a shopping bag. Inv. Kirt Stillwagon reported that the temporary guest stated that both bags belonged to Rodney Peterson. Inv. K. Stillwagon reported that he asked and received consent from this temporary guest to open and search those bags where he found fentanyl, methamphetamine, and an AR-15 style rifle with ammunition.
>
> Inv. Kirt Stillwagon then filed additional charges against me for the contraband he produced as a result of the warrantless search. Please see body-cam footage, along with Affidavit of Complaint (Agency #W24008807).

[Doc. 7 at Page ID # 29-30].

Plaintiff seeks the following relief:

> Revoke qualified immunity for Inv. K. Stillwagon. Uphold my protection against illegal search and seizure. Reduce the authority of Inv. K. Stillwagon so he will not be able to use these "bully" tactics on other civilians as he operates while under the color of law. I wish for the Court to order Johnson City Police Department to return the $1,150.00, the cash app card, and the three cell phones that was seized as a

result of Inv. K. Stillwagon's outrageous conduct. I wish for the Court to grant me compensatory damages for the time that I have spent under false imprisonment after the false arrest. I wish to be awarded punitive damages against Inv. K. Stillwagon as well as damages for mental anguish and emotional distress because of the fact of suffering from "PTSD" due to a recent injury from an automobile accident as a result of an individual following too close and rear ending me.

[Doc. 2 at Page ID # 8[2]].

Plaintiff was indicted on federal charges in the Eastern District of Tennessee related to the events he describes in his complaint, Case No. 2:24-cr-78-DCLC-CRW. Those charges remain pending, with trial set for August 5, 2025. [*See Id.*, Doc. 57]. Plaintiff is represented by counsel in the criminal case.

The Court cannot address Plaintiff's claims at this juncture without unduly interfering with Plaintiff's ongoing federal criminal case. Courts have dismissed IFP prisoner complaints under similar circumstances, but typically only as to any requests for injunctive relief related to the criminal proceedings or to avoid rulings inconsistent with those made in the criminal case. *See Woodford v. Walden*, No. 24-10062, 2025 WL 957514, at *2 (E.D. Mich. Mar. 31, 2025) (dismissing prisoner's civil rights suit where prisoner's motion to suppress based on same facts was denied in criminal case, reasoning that the plaintiff's "claims may be addressed during his criminal proceedings, on appeal, or in a post-conviction collateral attack," and that dismissal of the civil rights claims "by no means precludes Woodford from pursuing his constitutional claims through other appropriate means."); No. 3:21-cv-2525-D (BT), *Laster v. Boyle*, 2022 WL 4086782, at *7, *7 n.3 (N.D. Tex. Aug. 4, 2022) (recommending dismissal of prisoner's request for injunctive relief, "based on the same logic set forth in *Younger v. Harris*, 401 U.S. 37 (1971)," but noting *Younger* does not preclude claims for damages), *report and recommendation adopted*,

---

[2] The supplement to the complaint seeks similar relief. [*See* Doc. 7 at Page ID # 31].

2022 WL 4084429 (N.D. Tex. Sept. 6, 2022); *Crowe v. Albert*, No. 1:22-cv-70-BJB, 2022 WL 17363959, at *3 (W.D. Ky. Dec. 1, 2022) (dismissing prisoner's request for injunctive relief, finding the court "lacks any basis to interfere with Plaintiff's ongoing federal proceedings" (citations omitted)).

In *Giles v. Garland*, No. 2:24-CV-10332-TGB-PTM, 2024 WL 2138624, at *2 (E.D. Mich. May 13, 2024), the court dismissed a prisoner-plaintiff's civil rights case, including his request for damages, but the dismissal was without prejudice:

> Giles's complaint must be dismissed: his proposed claims would interfere directly with his pending criminal prosecution. A criminal defendant cannot file a civil rights action to undermine or reverse decisions made in a pending criminal case or in an attempt to forum-shop for a new judge or defense counsel. Just as the Court would abstain from interfering in a pending state court criminal case if a state pretrial detainee raised claims challenging those proceedings, a similar rule of abstention applies when federal pretrial detainees challenge ongoing federal criminal proceedings through civil actions.
>
> In this case, Giles seeks damages and an order enjoining his prosecution. The claims raised in this case would obviously interfere with the pending criminal action. Or, they may be an effort to obtain recusal of the undersigned and removal of his counsel. This is not a permissible use of the Court's time and resources. The claims of evidence concealment and fabrication raised here may be addressed in the course of his criminal pretrial proceedings and at his upcoming criminal trial. A parallel civil action may not be maintained merely to collaterally attack the pending criminal proceedings.

*Id.* (citing *Younger*, 401 U.S. at 43–44) (other citations omitted)).

The Court agrees with the reasoning in *Giles* and will therefore recommend dismissal of Plaintiff's requests for injunctive relief and declaratory relief (to the extent Plaintiff seeks declaratory relief). As to Plaintiff's requests for damages, however, the Court finds a stay is more appropriate than dismissal in this case. This determination is based in part on the principles set

8

forth in *Younger*,[3] but also on statute-of-limitations considerations and the current status of Plaintiff's criminal case.[4] The Court also notes Plaintiff has a co-defendant in his criminal case.

There are undoubtedly some deficiencies in Plaintiff's claims as alleged, for example the conclusory allegation that the alleged "temporary guest" of the motel room lacked consent to allow the officers to search the motel room (and therefore "containers within that area," *see United States v. Caldwell*, 518 UF.3d 426, 430 (6th Cir. 2008)). The only factual allegation Plaintiff offers in support is that the guest was not a "registered tenant," without any further elaboration regarding the guest's status or reason(s) for being present in the motel room. *See United States v. Taylor*, 600 F.3d 678, 681 (6th Cir. 2010) ("Whether the facts presented at the time of the search would warrant a man of reasonable caution to believe the third party has common authority over the property depends upon all of the surrounding circumstances." (quoting *United States v. Waller*, 426 F.3d 838, 846 (6th Cir. 2005))). To avoid any unintentional interference with Plaintiff's pending criminal case, the Court will refrain from addressing the substance of Plaintiff's claims any further. Of course, this does not amount to a finding that Plaintiff is likely to prevail on any claims in this civil case or on any constitutional issues raised in his criminal case. Rather, to the extent Plaintiff seeks damages in this case, any such deficiencies are better addressed by the parties (if necessary) following the conclusion of Plaintiff's criminal case.

---

[3] The Sixth Circuit has "consistently held that if a court abstains under *Younger*, it should stay any claim for damages rather than evaluate the merits and dismiss the case." *Doe v. Univ. of Ky.*, 860 F.3d 365, 372 (6th Cir. 2017) (citing cases).

[4] Federal courts apply state statutes for § 1983 claims. *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005). "Tennessee applies a one-year statute of limitations to § 1983 actions." *Harvey v. Tennessee*, No. 1:17-CV-297-CLC-CHS, 2019 WL 5075826, at *1 (E.D. Tenn. Oct. 9, 2019) (citing *Zundel v. Holder*, 687 F.3d 271, 281 (6th Cir. 2012); Tenn. Code Ann. § 28-3-104(a)(1)).

9

### III.     CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS**[5] that Plaintiff's claims be allowed to proceed past the § 1915 screening stage to the extent they seek monetary damages rather than injunctive or declaratory relief. Plaintiff's requests for injunctive relief should be dismissed. A summons should be issued for Inv. Stillwagon, to be served by the United States Marshals Service along with a copy of the complaint [Doc. 2; Doc. 7], consistent with applicable IFP procedures. The case should be **STAYED** for all purposes other than service on Inv. Stillwagon, pending resolution of Plaintiff's pending federal criminal case, No. 2:24-cr-78-DCLC-CRW.

Finally, Plaintiff **SHALL NOT** attempt to further supplement or amend his complaint until this report and recommendation has been addressed by the presiding District Court Judge. Any such requests are subject to summary denial.

ENTER:

/s/
MIKE DUMITRU
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).